IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


DONALD C. SMITH,                    §
                                    §
              Plaintiff,            §
                                    §
v.                                  §        CIVIL ACTION NO. H-06-4124
                                    §
J.B. HUNT TRANSPORT, INC. and       §
JOHN DOE CORPORATION I,             §
                                    §
              Defendants.           §


**MEMORANDUM OPINION AND ORDER**


     Plaintiff Donald Smith filed his Original Complaint (Docket
Entry No. 1) on December 29, 2006.  Pending before the court is
defendant J.B. Hunt Transport, Inc.'s ("Hunt") Motion for Summary
Judgment (Docket Entry No. 16) and Smith's Response to JBH's Motion
for Summary Judgment (Docket Entry No. 17) and his Memorandum of
Law in Support of His Response to Defendant's Motion for Summary
Judgment (Docket Entry No. 23), which the court ordered Smith to
submit on December 7, 2007.  For the reasons stated below, the
court will deny Hunt's motion.


## I.  Factual Background

     Hunt and Smith entered an Independent Contractor Operating
Agreement in which Smith agreed to work as an independent
contractor and drive freight for Hunt and its customers.[1]  As an

_____

[1]Defendant's Motion for Summary Judgment, Docket Entry No. 16,
Exhibit A, Independent Contractor Operating Agreement.

independent contractor Smith was bound only by the terms of his contract with Hunt and was not considered a Hunt employee.[2]  Under the contract Smith reserved the right to reject any dispatch he received from Hunt.  However, once Smith accepted a dispatch to one of Hunt's customers, Smith was required to complete the job, and "to satisfy the requirements of [Hunt's] customers," or stand in material breach of his contract.[3]

Smith accepted a dispatch from Hunt to haul freight for Anheuser-Busch.[4]  However, when Smith pulled into the Anheuser-Busch plant, Anheuser-Busch would not allow Smith to haul the freight because Smith's trailer had a large spot on the floor and did not meet Anheuser-Busch's standards for cleanliness.  The plant inspector informed Smith that unless the trailer was washed, Smith would not receive the load.[5]

Smith drove to a nearby truck stop to have the trailer washed only to discover that the truck-wash no longer existed.  Not knowing where to get the trailer washed, Smith called Hunt's dispatcher for assistance.  Hunt's dispatcher told Smith that there were no commercial truck washes in the vicinity, and that Smith should call Hunt's Road Breakdown group for further assistance.

---

[2] Id. at 4 ¶ 9.

[3] Id. at 7 ¶ 12g.

[4] Id., Exhibit B, Deposition of Donald Smith, p. 76:17-18.

[5] Id. at 80-82.

Hunt's Road Breakdown group informed Smith that there was a hose outside a nearby Hunt facility that he could use to wash out the trailer, and that Hunt would pay him to do so.[6]  The Road Breakdown group further informed Smith that this was the only facility in the area where the trailer could be washed.[7]  Smith agreed to wash the trailer with the hose outside Hunt's facility.[8]

Smith arrived at Hunt's facility around 11:00 p.m. but found no hose and notified Hunt's Road Breakdown group accordingly. Hunt's Road Breakdown group instructed Smith to wait at the facility until the following morning when Hunt's shop would open.[9]

The next morning Smith went into Hunt's facility and informed the shop foreman that the trailer needed to be washed.  The shop foreman told Smith that the shop would wash Smith's trailer and directed Smith to pull the trailer into the wash bay, which Smith did.[10]  While waiting for Hunt's shop personnel to wash the trailer, Smith retrieved the tools that Hunt employees told him were used to do the job: a ladder and a hose.  Smith placed both implements at

---

[6]<u>Id.</u> at 86-87.

[7]Plaintiff's Response to JBH's Motion for Summary Judgment, Docket Entry No. 17, Exhibit A, Deposition of Donald Smith pp. 98, 100.

[8]Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. B, Smith Depo. p. 87.

[9]<u>Id.</u> at 89-90.

[10]Plaintiff's Response to JBH's Motion for Summary Judgment, Docket Entry No. 17, Ex. A, Smith Depo. pp. 93-94.

the back of the trailer and waited for some Hunt employee to wash the trailer.[11]

After waiting for roughly forty-five minutes, the shop foreman returned to Smith's trailer and directed Smith to wash the trailer himself.  Smith protested because of Hunt's policy that drivers are not supposed to wash trucks in Hunt's wash bay.  The shop foreman replied that either Smith would wash the trailer himself, or the trailer would not get washed.[12]

Before leaving Smith alone to wash the trailer, the shop foreman told Smith that he had to use the hose he obtained from the shop and not a steam cleaner that was available nearby; this hose had no pressure nozzle on the end to restrain the water flow.  As he left, the shop foreman turned the water on for Smith.[13]  After the shop foreman left, and while water flowed into the trailer, Smith deliberated for approximately five minutes about whether he should wash the trailer.  Smith had attempted to abandon the Anheuser-Busch dispatch because he could not get the trailer washed, but Hunt forbade Smith from doing so since he had already accepted the dispatch.[14]

Smith ultimately decided to wash the trailer himself.  As he climbed the step ladder to get into the back of the trailer, Smith

---

[11]Id. at 94-95, 117.

[12]Id. at 97.

[13]Id. at 104.

[14]Id. at 101-02.

slipped and fell off the ladder and onto the concrete floor and was injured.  Although the ladder was clean when Smith retrieved it, an oily substance had spilled out of Smith's trailer along with the hose-water and onto the ladder-rung where it caused Smith's foot to slip.[15]   Smith then brought this action against Hunt for his injuries, alleging that Hunt had failed to provide a safe work environment.[16]

## II.   <u>Standard of Review</u>

Summary judgment is proper under Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of production "to point out the absence of evidence supporting the nonmovant's case."  <u>Malacara v. Garber</u>, 353 F.3d 393, 404 (5th Cir. 2003) (citing <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548 (1986)).  If the moving party satisfies that burden, "the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action."  <u>Id.</u>  "It is not enough for [the nonmoving party] to rest on mere conclusory allegations or

---

[15]Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. B, Smith Depo. p. 110.

[16]Plaintiff's Original Complaint, Docket Entry No. 1, pp. 6-7 ¶ 17.

denials in his pleadings." <u>Park v. Stockstill Boat Rentals, Inc.</u>, 492 F.3d 600, 605 (5th Cir. 2007).  "In deciding whether a fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party." <u>Berquist v. Washington Mut. Bank</u>, 500 F.3d 344, 349 (5th Cir. 2007).

### III.  <u>Analysis</u>

Hunt argues that it is entitled to judgment either because it owed Smith no duty of care, or because there is no evidence that Hunt breached its duty.  Each argument will be addressed in turn.

### A.  Duty

Hunt argues that it owed Smith no duty of care because Smith was an independent contractor.  A premises owner or a general contractor who is in control of the premises has a duty of care to keep the premises in a safe condition. <u>Redinger v. Living, Inc.</u>, 689 S.W.2d 415, 417 (Tex. 1985).  However, a premises owner or a general contractor generally has no duty to ensure that an independent contractor works in a safe manner. <u>See</u> <u>id.</u> at 418.  A general contractor will owe an independent contractor a duty of care only when the general contractor has retained some supervisory control over the independent contractor's work. <u>See</u> <u>id.</u> (citing Restatement (Second) of Torts § 414).  In determining whether an owner or employer retained or exercised a right to control the independent contractor's work, "the standard is narrow." <u>Coastal</u>

-6-

Marine Serv. of Tex. v. Lawrence, 988 S.W.2d 223, 226 (Tex. 1999).
A general contractor has not retained "supervisory control" if all
that was retained was a "general right to order work to stop and
start, or to inspect progress." Id. The "supervisory control must
relate to the condition or activity that actually caused the
injury[.]" Hoeschst-Celanese Corp. v. Mendez, 967 S.W.2d 354, 357
(Tex. 1998) (internal quotations and citations omitted). Moreover,
a general contractor who has retained some supervisory control over
an independent contractor is not subject to an unqualified duty of
care. Id. The scope of the general contractor's duty is strictly
limited to the scope of the general contractor's supervisory
control. Id.

A general contractor's right of control can be established
either "by evidence of a contractual agreement which explicitly
assigns the premises owner a right of control"; or "by evidence
that the premises owner actually exercised control over the job."
Coastal Marine Serv. of Tex., 988 S.W.2d at 226. Whether the owner
or employer retained control by contract is a question of law.
Shell Oil Co. v. Khan, 138 S.W.3d 288, 292 (Tex. 2004). Whether
the owner or employer exercised actual control is generally a
question of fact. Id. Hunt argues that there is no evidence that
it exercised a right of control whether by contract or actual
exercise.[17]

_____

[17]See Plaintiff's Memorandum of Law in Support of His Response
to Defendant's Motion for Summary Judgment, as Requested by the
Court, Docket Entry No. 23, pp. 9-10.

-7-

Hunt is correct in asserting that Smith has submitted no evidence to establish that Hunt contractually retained a right of control over the washing of the trailer.  The provisions of Hunt's contract with Smith do not evince an intent to retain a right of control over the manner in which Smith washed the trailer.  The contract between Hunt and Smith states that Smith is "an independent contractor with respect to transportation operations" and that Hunt reserves no right to bind Smith except as otherwise provided in the contract.[18]  On its face, Hunt's contract with Smith does not purport to specify the method, manner, or devices to be used when washing a trailer.  There is no provision in the contract that granted Hunt the right to take over the task of washing the trailer if Hunt believed Smith was working unsafely.  Cf. Tovar v. Amarillo Oil Co., 692 S.W.2d 469, 470 (Tex. 1985) (holding that a general contractor retained a contractual right of control where the contract's provisions required the independent contractor to use specific safety measures and devices and allowed the general contractor to take possession of the project and suspend operations if the oil company found that the independent contractor was conducting drilling operations in an unsafe manner).

Smith argues that because Hunt contractually required Smith to comply with Hunt's "operating policies and procedures," which includes complying with a customer's requests to have a trailer

_____

[18]See Def. Ex. A.

washed,[19] Hunt retained a supervisory right over the manner in which Smith washed the trailer.    Even if Smith were correct in his assertion, the cited provision, at most, evinces a "general right of control over operations," Exxon Corp. v. Tidwell, 867 S.W.2d 19, 23 (Tex. 1993), not a supervisory right to control the manner in which Smith washed the trailer.   Nor does the purported company policy forbidding Smith from washing the trailer while in Hunt's facility prove a contractual retention of supervisory control.   A retained right to forbid work from being done generally is not the same as a retained right to forbid work from being done in a dangerous manner.   See Koch Refining Co. v. Chapa, 11 S.W.3d 153, 156-57 (Tex. 2000).   The former evinces a general right of control, while the latter evinces a control over the "operative detail" of the work to be performed that is not present under the facts of this case.   Accordingly, the court concludes that Hunt did not retain in its contract with Smith the right to control Smith and the manner in which he washed the trailer or the methods he used.

There is, however, a genuine fact issue as to whether Hunt actually exercised a right of control over Smith.   Evidence that a premises owner or general contractor controlled the time to be spent on the work, the tools and appliances used to perform the work, or the method or manner of accomplishing the work is

---

[19]See Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. A, Independent Contractor Operating Agreement p. 8 ¶ 12g.

generally sufficient to establish a genuine fact issue as to whether an owner or contractor exercised a right of control over an independent contractor. See, e.g., Redinger, 689 S.W.2d at 418.

Smith has submitted evidence, through his deposition testimony, that he was "directed" by Hunt's shop foreman to wash the trailer with a particular hose.[20]   Hunt contends that this

_____

[20]Plaintiff's Response to JBH's Motion for Summary Judgment, Docket Entry No. 17, Exhibit A, Deposition of Donald Smith:

A.   [The shop foreman] told me that I didn't understand, I was going to have to wash [the trailer] out myself.

Q.   Okay.  And what did you reply?

A.   I told him I couldn't because I wasn't supposed to be in that wash bay doing that job.

Q.   Okay.  And what did he say?

A.   He said I'll either wash it out or it won't get done.  He was short personnel.

Q.   All right.  And so he directed you to wash it out?

A.   Yes, sir.

.  .  .  .

Q.   Why didn't you use the steam cleaner to wash the trailer?

A.   Because the shop foreman said I washed it out the other way.
.  .  .  .

Q.   Did [the shop foreman] tell you specifically just use the water hose?

A.   Yes.

Id. at 97, 103-104.

evidence is not evidence that Hunt exercised a right of control over Smith.  The court disagrees.

In <u>Ponder v. Morrison-Knudsen Co.</u>, 685 F. Supp. 1359 (E.D. Tex. 1988), a general contractor had entered into an agreement for an independent contractor's packing services.  <u>Id.</u> at 1360.  While the independent contractor was performing its duties under the contract, an employee of the general contractor ordered the independent contractor's employees to manually lift and move a heavy railroad switch.  <u>Id.</u> One of the employees was injured while complying with the order and consequently sued the general contractor for his injuries.  <u>Id.</u> After the jury found for the injured employee, the general contractor moved for judgment as a matter of law.  The general contractor argued that under <u>Redinger</u> it had not exercised a right of control over the independent contractor's employee and therefore owed him no duty.  <u>Id.</u> at 1361-62.  The court denied the contractor's motion.  Based on the plaintiff's evidence that the general contractor had ordered the plaintiff to manually lift the switch, the court concluded that a reasonable jury could infer not only that the general contractor required the plaintiff to perform the task in a particular manner (manually lifting the switch), but also implicitly forbade the plaintiff from performing the task in another, safer way.  <u>Id.</u> at 1362-63.[21]

---

[21]<u>Cf.</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986) (finding the summary judgment standard nearly identical to the standard governing motions for a judgment as a matter of law).

Smith's evidence is susceptible to the same inferences.  Smith testified in his deposition that Hunt's shop foreman ordered him to wash the trailer with a particular hose.  Accordingly, viewed in the light most favorable to Smith, the evidence suggests that Hunt not only controlled Smith in the manner in which he washed the trailer, but also impliedly prohibited Smith from washing the trailer in a different manner.  In fact, Smith's deposition testimony indicated that but for the shop foreman's order to use the hose, Smith would have used a safer method.[22]

Hunt does not dispute Smith's testimony.  Instead, Hunt argues that even if true, the shop foreman's directive -- that Smith wash the trailer himself with a particular hose -- is not evidence of actual control because, as an independent contractor, Smith was free to ignore the order.  The court is not persuaded.  In Ponder the court concluded that even though the plaintiff knew the general contractor could not fire him if he ignored the general contractor's order to lift the switch, a right of control could still be reasonably inferred from the evidence because, based on "the business relationship between [the independent and general contractor], [the plaintiff] felt obligated to comply with [the general contractor's] order[.]"  Ponder, 685 F. Supp. at 1362.

---

[22]Plaintiff's Response to JBH's Motion for Summary Judgment, Docket Entry No. 17, Exhibit A, Smith Depo. pp. 103-04 (indicating that Smith would have used a steam cleaner that was located near the trailer to wash the trailer had the shop foreman not required Smith to use the hose).

This decision is consistent with the Texas Supreme Court's decision in D. Houston, Inc. v. Love, 92 S.W.3d 450 (Tex. 2002). There, the plaintiff was an independent contractor who had contracted with a general contractor for her services as an exotic dancer. Id. at 452. While performing her contractual duties, the plaintiff consumed several alcoholic drinks, became intoxicated, and was injured while driving home. Id. at 452. She sued her general contractor for common law negligence, alleging that the general contractor negligently failed to stop her from driving despite its knowledge of her intoxication. Id. at 453. The general contractor argued that it owed the plaintiff no duty of care because there was no evidence that it had exercised a right of control over the plaintiff's decision to consume alcohol. The Texas Supreme Court disagreed. The plaintiff had testified during her deposition that although she was not forced to consume alcohol, she decided to drink because the general contractor had made it clear that if she did not, she would lose her job. Id. at 456. The court held that "[t]his testimony," was both evidence of, and raised a fact question regarding, the general contractor's control over the plaintiff's decision to consume alcohol, which was a proximate cause of her injuries. Id.[23]

---

[23]Although the Texas Supreme Court did not expressly conclude that fact issues arose as to whether the general contractor exercised actual, rather than contractual, control, that is the only reasonable conclusion one could draw from that case since questions of contractual control are questions of law rather than fact.

Hunt does not dispute Smith's testimony that Hunt refused to release Smith from the Anheuser-Busch dispatch, which would have allowed Smith to avoid having to wash the trailer, after Smith advised Hunt that no one else could wash the trailer.[24]  It is also undisputed that the only person who could wash the trailer was Smith since no other places to wash the trailer were available,[25] and since none of Hunt's employees would or could wash it for him.[26]  Moreover, Hunt does not dispute that Smith was ultimately contractually required to wash the trailer himself since, under the contract's terms, the failure to do so would have resulted in a material breach.[27]  Under the logic of both Ponder and D. Houston, Inc., and drawing all inferences from this evidence in Smith's favor, this is evidence that Hunt exercised a right of control over Smith and raises further fact issues regarding Hunt's control over Smith's decision to wash the trailer.[28]

--------------------------------------------------

[24]Plaintiff's Response to JBH's Motion for Summary Judgment, Docket Entry No. 17, Exhibit A, Smith Depo. pp. 101-02.

[25]See id. at 98-99.

[26]Id. at 97-98.

[27]See Defendant's Motion for Summary Judgment, Docket Entry No. 16, Exhibit A, Independent Contractor Operating Agreement pp. 7-8 ¶ 12g.

[28]Hunt also argues that under Exxon v. Quinn, 726 S.W.2d 17 (Tex. 1987), Smith's deposition testimony is, at most, evidence that the shop foreman participated in Smith's decision to wash the trailer and therefore is insufficient to defeat summary judgment. See id. at 19-20 (holding that a landowner's participation and
(continued...)

-14-

**B.  Breach of Duty**

Hunt argues in the alternative that even if it did owe Smith a duty of care, there is no evidence that Hunt breached that duty. Hunt contends that since Smith was injured after slipping and falling on a ladder rung, this is a premises defect case; and that since Smith has submitted no evidence that Hunt had actual or constructive knowledge about the slippery ladder rung that caused Smith's injury, there is no evidence that Hunt breached its duty of care.  However, Hunt misconstrues Smith's claim.

Smith's claim is not merely that he slipped and fell, but that Hunt failed to provide Smith with a safe place to wash the trailer.[29]  A contractor that has exercised a right of control over an independent contractor's work has a duty to provide the independent contractor a safe place to work.  See Redinger, 689 S.W.2d at 418.  In support of his claim Smith has produced evidence that the equipment Hunt provided -- namely, the hose and step-ladder -- created an unsafe work environment; that Hunt should have known about the dangers the equipment posed; and that the ladder

---

[28](...continued)
acquiescence in an independent contractor's decision to work in an unsafe manner was not evidence of control).  However, the evidence Smith submitted suggests that by requiring Smith to choose between breaching his contract or personally washing the truck, and by directing Smith to wash the truck with particular instruments, Hunt went beyond mere "participation" and exercised a right of control over Smith's decision to wash the truck.

[29]See Plaintiff's Original Complaint, Docket Entry No. 1, pp. 6-7 ¶ 17.

and hose provided were a proximate cause of Smith's injuries.[30]
This evidence is sufficient to create a genuine fact issue as to
whether Hunt breached its assumed duty of care.

### IV.  Conclusion and Order

For the reasons explained above, Defendant's Motion for
Summary Judgment (Docket Entry No. 16) is **DENIED**.

The court views this case as appropriate for mediation.  If
the parties are not able to settle the case in the next thirty
days, they will furnish the court with the name, address, telephone
number, and fax number of an agreed upon mediator.

Paragraphs 10 and 11 of the Docket Control Order (Docket Entry
No. 11) are **VACATED**.

**SIGNED** at Houston, Texas, on this 5th day of February, 2008.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[30]See Plaintiff's Response to JBH's Motion for Summary
Judgment, Docket Entry No. 17, Exhibit B, Affidavit of Gary S.
Nelson, Ph.D, CSP, PE, p. 5.